Vernal FORBUS;  Earl J. Beacham;  Rudolph Caddell;  Frank R. Davis;  Vernie Rhodes, Jr., Plaintiffs–Appellants,

v.

SEARS ROEBUCK & COMPANY,
Defendant–Appellee.

No. 93–6404.

United States Court of Appeals,
Eleventh Circuit.

Sept. 2, 1994.

William C. Knight, Jr., J. Patrick Logan, Jennifer M. Busby, Birmingham, AL, for appellants.

William A. Robinson, Birmingham, AL, S. Richard Pincus, Joel W. Rice, Chicago, IL, for appellee.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Because we are reviewing a grant of summary judgment, we must construe the facts in the light

Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

DUBINA, Circuit Judge:

Vernal Forbus, et al. ("the plaintiffs") appeal the district court's grant of partial summary judgment to Sears Roebuck & Company ("Sears"). The plaintiffs challenge the district court's order allowing Sears to amend its answer in order to assert the affirmative defense of ERISA preemption, as well as the district court's conclusion that their state law fraud claims are preempted by ERISA. We hold that it was not an abuse of discretion for the district court to allow Sears to amend its answer. However, we hold that the district court erred in its conclusion regarding the ERISA preemption issue. Accordingly, we affirm in part and reverse in part.

## I. *STATEMENT OF THE CASE*

### A. *Facts* [1]

The plaintiffs were employed by Sears at a Retail Distribution Center ("RDC") in Birmingham, Alabama. The RDC was used by Sears to store and distribute merchandise to various retail outlets as well as customers' homes. In late October or early November, 1989, Neal Owings ("Owings"), General Manager of the RDC, announced at several employee meetings that the company planned to shut down the warehouse facility. Owings explained that the facility would be shut down, the jobs at the facility would be eliminated, and thus employment at the facility would be terminated as of December 31, 1989.

At a later meeting, the plaintiffs received a booklet which represented Sears' program or plan applicable to employees affected by the closing of one of its facilities. This plan has been called the "Retirement Incentive Package" (hereinafter, "the package"). Sears advised the plaintiffs that they had no choice but to elect to participate in the program,

most favorable to the nonmovant—here, the plaintiffs. Thus, the factual summary is given in that context.

sign the release and elect the package of options, because failure to do so would result in termination as of December 31, 1989, with no benefits. The plaintiffs expressed their desire to continue employment with Sears; they did not wish to retire. Sears reiterated that they had no choice but to "involuntarily" retire. Accordingly, each of the plaintiffs elected voluntary retirement and participation in the program.

Sometime in January, 1990, the plaintiffs learned that the warehouse would become a Cross–Dock Center ("CDC"). Consequently, they requested reinstatement to their former positions, but were told that their former positions were no longer available. However, the plaintiffs' jobs were not actually eliminated. The plaintiffs contend that their positions were in fact filled by younger employees.

The plaintiffs brought suit against Sears alleging fraud, based on Sears' false representations concerning the closing of the facility. The crux of the plaintiffs' complaint is the fraudulent inducement to resign based on the closing of the facility.

### B. *Procedural History*

The plaintiffs filed their complaint against Sears on June 26, 1990. The complaint was premised on the Age Discrimination in Employment Act ("ADEA"), as amended 29 U.S.C. § 621 *et seq.* and several state law causes of action in contract and fraud. Sears moved for summary judgment on all claims based on the plaintiffs' execution of releases. The district court denied the motion. Sears then moved for summary judgment on the plaintiffs' state law claims based on the employment-at-will doctrine and Sears' lack of intent to deceive. The district court granted the motion.

Sears took an interlocutory appeal with respect to the district court's denial of summary judgment on the plaintiffs' ADEA claims. The plaintiffs took an appeal from the order dismissing the state law fraud claims, which was a final order. This court affirmed in part, reversed in part, and remanded the district court's order, holding that the plaintiffs could assert fraud claims under Alabama law because they were fraud-

ulently induced to resign their positions with Sears. *Forbus v. Sears, Roebuck & Co.*, 958 F.2d 1036 (11th Cir.1992) (*"Forbus I"*). Sears then petitioned the United States Supreme Court for certiorari on its ADEA claims. Certiorari was denied, and the case was remanded to the district court. *Forbus I*, 958 F.2d 1036 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 412, 121 L.Ed.2d 336 (1993).

After remand, Sears moved to amend its answer in order to assert ERISA preemption as an affirmative defense. Sears contemporaneously filed a motion for partial summary judgment on the plaintiffs' state law claims based on the ERISA preemption argument. The district court granted Sears' motion for partial summary judgment and entered a final order dismissing all of the plaintiffs' state law fraud claims. The plaintiffs then perfected this appeal.

### II. *STANDARD OF REVIEW*

■ A district court's decision to grant or deny leave to amend is reviewed for abuse of discretion. *Smith v. Duff and Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir.1993).

■ Summary judgment should be granted where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The 'purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Wouters v. Martin County, Fla.*, 9 F.3d 924, 928 (11th Cir.1993), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A grant of summary judgment is an issue of law to be reviewed *de novo*. *RJR Nabisco, Inc. v. United States*, 955 F.2d 1457, 1459 (11th Cir.1992).

### III. *DISCUSSION*

#### A. *Leave to Amend*

■ The plaintiffs contend that the district court erred when it allowed Sears, over two and a half years after filing its original

answer, to amend its answer in order to include the affirmative defense of ERISA preemption. District courts have broad discretion to grant or deny leave to amend. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Smith,* 5 F.3d at 493. In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988).

Here, we cannot find that the district court abused its discretion when it allowed Sears to amend its answer. Sears maintains that the plaintiffs were on notice as early as December of 1990 that Sears intended to assert ERISA preemption as an affirmative defense. Indeed, promptly after the parties' cross-appeals were resolved, and following quickly on the heels of this court's decision in *Sanson v. General Motors Corp.,* 966 F.2d 618 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993), Sears moved to amend. Moreover, the plaintiffs show no prejudice from Sears' alleged delay.

The plaintiffs' contentions that Sears' ERISA preemption defense is barred by the law of the case doctrine, and that Sears waived that defense, are without merit and do not warrant further discussion. Therefore, we affirm the district court's order granting Sears leave to amend its answer.

B. *ERISA Preemption*

■ ERISA is a comprehensive legislative scheme enacted by Congress "to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Through the enactment of ERISA, Congress also intended to safeguard "employers' " interests by "eliminating the threat of conflicting and inconsistent State and local regulation of employee benefit plans." *Id.* at 99, 103 S.Ct. at 2901, *quoting* 120 Cong.Rec. 29197, 29933 (1974). ERISA thus expressly provides for the preemption of "any and all state laws insofar as they may now or hereaf-

ter relate to any employee benefit plan.…" 29 U.S.C. § 1144(a).

■ In dealing with the preemption issue, this court must at all times keep in mind this basic tenet: "[t]he question of whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Specifically, however, analysis of the preemption issue has focused on the "relate to" language of § 514(a) of ERISA. Indeed, the "key to § 514(a) is found in the words 'relate to.' " *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). The Supreme Court has explained that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. However, some laws may affect employee benefit plans in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. at 2901 n. 21. Thus, even though the Supreme Court has afforded ERISA preemption a broad sweep, the Court has consistently "recognized limits to ERISA's preemption clause." *McClendon,* 498 U.S. at 139, 111 S.Ct. at 483.

■ This court has also recognized the limits of ERISA preemption. In *Sanson v. General Motors Corp.,* 966 F.2d 618, 621 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993), this court instructed that "a law normally would not be preempted if the statute did not require the establishment or maintenance of an ongoing plan, or if a statute makes no reference to, or functions irrespective of, a plan." In short, the mere existence of an ERISA plan is not enough for preemption. Rather, the state law in question must make reference to or function with respect to the ERISA plan in order for preemption to occur. *Id.*

■ In the present case, the district court found that the plaintiffs' claims "relate to" an ERISA plan. We disagree. In reaching its decision, the district court relied pri-

marily on *McClendon* and *Sanson* for the proposition that ERISA preemption applies in this case. The district court's reliance on these cases was misplaced, however, because each is distinguishable from the present case. We discuss each case in turn.

In *McClendon,* the Supreme Court held that ERISA preempted a Texas common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA. The Texas Supreme Court had held that ERISA did not preempt the cause of action, reasoning that the plaintiff was not seeking lost pension benefits, but rather was seeking other measures of compensation, such as lost future wages and mental anguish. The Supreme Court disagreed with this analysis, and explained that there is no basis for "limiting ERISA actions to only those which seek 'pension benefits'." *McClendon,* 498 U.S. at 145, 111 S.Ct. at 486.

While *McClendon* is an example of the expansive nature of ERISA preemption, it is distinguishable from the present case. The plaintiff in *McClendon* was fired four months before his pension would have vested. He sued the company, claiming that his termination was motivated by the company's desire to avoid making contributions to his pension fund. Thus, he sought damages due to the loss of his *pension benefits plan.* This fact was of critical importance to the Court:

> Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself.

*Id.* at 139–140, 111 S.Ct. at 483 (emphasis in original). Accordingly, the Court had "no difficulty" concluding that the plaintiff's claim "related to" an ERISA-covered plan and that it was therefore preempted. *Id.*

In contrast, the plaintiffs' claims in this case center on Sears' alleged fraud concerning the elimination of the plaintiffs' jobs, not fraud concerning an ERISA plan or any other benefits package. The plaintiffs have not claimed any fraud as it relates to the amount of pension benefits received, nor have the plaintiffs made any allegation that Sears mis-represented the availability of pension benefits to the plaintiffs. Simply put, the plaintiffs contend that Sears lied when it informed them that their jobs were being eliminated.

This court considered the issue of ERISA preemption in *Sanson.* As noted above, we explained in *Sanson* that the mere existence of an ERISA plan is not enough to necessitate preemption. Rather, the state law in question must make reference to or function with respect to the ERISA plan in order for preemption to occur. *Sanson,* 966 F.2d at 621. Nonetheless, this court held in *Sanson* that ERISA preempted the plaintiff's cause of action.

*Sanson,* while instructive, is distinguishable from the present case. In *Sanson,* the plaintiff Chester Sanson ("Sanson") alleged that General Motors fraudulently represented to him that benefits under a special retirement program would not be offered to employees such as himself. Relying on this representation, Sanson retired early, opting to take the standard package of retirement benefits. He claimed that but for the fraudulent representation, he would have continued his employment until it became clear whether he would be eligible for the special retirement package. *Sanson,* 966 F.2d at 619. Thus, he sought to recover the enhanced retirement benefits and compensatory and punitive damages. *Id.*

█ This court held that Sanson's claim did relate to an employee benefit plan. In fact, just as in *McClendon,* the existence of a pension plan was "critical" to the case. *Id.* at 621.

> In this case, the misrepresentation relates to Sanson's retirement benefits available under GM's special retirement plan. The measure of damages would be the amount of benefits Sanson would have received under the retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan.

*Id.* Obviously, the present case is distinguishable in that Sears' alleged misrepresentation did not involve a benefit plan—it involved the very existence of the plaintiffs' jobs. Furthermore, the mere fact that the

plaintiffs' damages may be affected by a calculation of pension benefits is not sufficient to warrant preemption. *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120–21 (4th Cir.1989).

In various other recent cases in which our sister circuits have held that ERISA preempts state law, the relationship between the state law and an employee benefit plan has been clear. *See Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 341 (6th Cir. 1993) (Kentucky law providing for the disbursement of a decedents estate—specifically regarding pension benefits—is preempted by ERISA); *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311, 1314 (5th Cir.1994) (wrongful discharge cause of action based on refusal to commit violations of ERISA is preempted by ERISA); *Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994) (state law claims regarding failure of company to disclose its consideration of an enhanced severance program are preempted by ERISA); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994) (state law regarding designation of a beneficiary relates to an ERISA plan and is therefore preempted). Such a clear connection is lacking here; in this case, the Alabama law governing fraudulent misrepresentation does not "relate to" an employee benefit plan.

ERISA preemption serves an important purpose: it "establish[es] pension plan regulation as exclusively a federal concern." *McClendon*, 498 U.S. at 138, 111 S.Ct. at 482. However, ERISA preemption is not without boundaries. In the present case—in which ERISA applies only peripherally, if at all—it would defy common sense to allow ERISA to preempt a state law fraud claim. The Alabama fraud statute at issue in this case does not require the establishment or maintenance of an ongoing plan, makes no reference to an ERISA plan, and functions irrespective of any such plan. *Sanson*, 966 F.2d at 621. Therefore, we hold that ERISA does not preempt the plaintiffs' state claims in this case.

## IV. CONCLUSION

For all of the foregoing reasons, we affirm the district court's order granting Sears leave to amend its answer, but we reverse the district court's holding that ERISA preempts the plaintiffs' state law claims.

AFFIRMED in part, and REVERSED in part.