**Asher PADEH, M.D., Ilonka Schwartz, M.D., Ashilo, Inc., a Florida corporation and Padeh & Schwartz, P.A., Plaintiffs,**

v.

**Irwin ZAGORIA and Pension Investors, Corp., a Florida corporation, and Endowment Services, Inc., a Florida corporation, Defendants.**

No. 95–1453–CIV.

United States District Court,
S.D. Florida.

Sept. 20, 1995.

Alan M. Grunspan, Miami, FL, for Plaintiffs.

Theodore R. Dempster, Neal L. Sandberg, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION FOR REMAND

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss the Complaint

---

**10.** *See* RFA Nos. 1, 12, 13, and 14.

(docket no. 2), filed on July 17, 1995, and Plaintiffs' Motion for Remand (docket no. 7), filed on August 10, 1995.

THE COURT has considered the motion, responses, the pertinent portions of the record, the oral argument of counsel on September 7, 1995, and being otherwise fully advised in the premises, it is

ADJUDGED that Defendants' motion to dismiss is DENIED. It is further

ADJUDGED that Plaintiffs' motion to remand is GRANTED.

## · LEGAL STANDARD

A court will not grant a motion to dismiss unless the plaintiff fails to prove any facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hosp., Inc. v. Hospital Corp. of Am.,* 795 F.2d 948 (11th Cir.1986).

## STATEMENT OF FACTS

Plaintiffs have sued Defendants for negligent misrepresentation and omissions arising out of the creation and Plaintiffs' subsequent adoption of certain employer-funded pension plans. Taking Plaintiffs' well pleaded facts as true, which the Court must do, the facts of the case are as follows.

Plaintiffs have been receiving pension related advice from Defendants Irwin Zagoria ("Zagoria") and Pension Investors Corporation on an ongoing basis since the early 1980's. After several years of owning a hotel on Miami Beach, Plaintiffs decided to sell the property. Instead of investing the sale proceeds in the purchase of similar property, thereby offsetting some of the potential tax consequences, Plaintiffs heeded the advice of Defendants and adopted certain pension programs arranged by Defendants. Plaintiffs agreed to fund the pension plans with proceeds from the sale of the hotel property.

According to the Complaint, Plaintiffs had made Zagoria fully aware of their then current and prospective financial condition. Zagoria, taking into account Plaintiffs' available needs and resources, represented to Plaintiffs that the pension plan and pension plan products he recommended were suitable for Plaintiffs. Zagoria indicated to Plaintiffs that his pension plan proposal would be at least as effective for tax savings purposes as a reinvestment into similar real estate. In May, 1993, Plaintiffs adopted two plans, a Defined Benefit Plan ("Plan") and the Prime Financial Benefit Trust ("Trust").

Plaintiffs allege that as a result of adopting the Plan and Trust, and based upon the advice of Defendants, they took higher wages than usual and, consequently, incurred greater taxes on those wages. Plaintiffs further argue that, from the beginning, Defendants had represented that the Plan would only be funded by annuities. However, in addition to annuities, the Plan actually required that it also be funded by life insurance policies sold by Defendants.

Approximately one year after adoption of the Plan, Defendants fully advised Plaintiffs of the required continued payment of substantial annual funding for the Plan and Trust. Upon this revelation, Plaintiffs discontinued any further funding and allowed the policies to lapse.

The substance of Plaintiffs' negligence claim is set forth in the Complaint as follows:

Defendants failed to disclose that the Plan would be funded with life insurance policies in addition to annuities or that the Plan would require payments of substantial annual premiums for approximately eight years as to Plaintiff PADEH and fifteen years to Plaintiff SCHWARTZ rather than the three to five years Defendants had earlier represented.

As to the Plan and Trust, Defendants were obligated to but failed to disclose the amount of sales commissions, expressed as a percentage of gross annual premium that were to be paid and a description of any surrender charges, fees, discounts, penalties and adjustments which may be imposed under the insurance and annuity

contracts, and also failed to obtain Plaintiffs' written acknowledgment thereof.

(Pls.' Compl. ¶¶ 26–27.)

Plaintiffs contend that as a result of Defendants' alleged negligence in advising Plaintiffs and recommending that they enter into pension plans, they have suffered damages in the form of

> loss of substantial portion of their investment, higher taxes, loss of opportunity in that Plaintiffs were entitled to a reasonable rate of return on their investment, administrative and legal expenses involved in the pension plans, legal and administrative expenses they incurred in investigating and attempting to rectify the improprieties caused by defendants in failing to make proper disclosures to Plaintiffs as to the types of products purchased, commissions paid and charges incurred in connection with the Plan and Trust.

(*Id.* ¶ 32.)

## *LEGAL ANALYSIS*

Defendants argue that Plaintiffs' claim, in its entirety, has been preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants insist that they are not fiduciaries as defined by ERISA. Defendants urge that because ERISA does not provide a cause of action against non-fiduciaries for negligent misrepresentations or omissions occurring in connection with the creation of employee welfare or pension plans, the Complaint fails to state a cause of action against Defendants.

The sole issue for this Court to resolve at the present stage is whether Plaintiffs' state law cause of action is preempted by ERISA. If ERISA does preempt Plaintiffs' claim, Plaintiffs concede that the motion to dismiss should be granted. By the same token, should the Court find that ERISA does not preempt Plaintiffs' claim, Defendants acknowledge that this case should be remanded to state court for further litigation.

## *ERISA LAW*

A. *Congressional Intent*

Through ERISA, Congress set out to

protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). The United States Supreme Court has described ERISA as a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). As a part of the comprehensively regulated ERISA system, Congress has created several safeguards to preclude abuse. Most important for purposes of this litigation is ERISA's broad preemption provision, § 514(a), as set forth in 29 U.S.C. § 1144. To determine whether Plaintiffs' state law cause of action is preempted, this Court must look to the Congressional intent behind the legislation. Congress' intent is found in § 514(a) of ERISA, where Congress provided that ERISA "shall supersede any and all State laws insofar as they relate to any employee benefit plan...."

To resolve the issue presented in the instant case, the Court must engage in a two-part analytic approach. First, is there an employee benefit plan as defined by ERISA? Second, do the applicable state laws relate to the ERISA plan? The parties do not dispute that the policy about which Defendants made the alleged misrepresentations and omissions was a "Plan" under ERISA. Thus, the sole remaining question is whether the state law "relates to" the ERISA plan and thereby preempts Plaintiffs' state law claim.

B. *Preemption*

"The pre-emption clause is conspicuous for its breadth." *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Its "deliberately expansive" language was "designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux,* 481

U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). The United States Supreme Court has determined that the "key" to § 514(a) is found in the words "'relate to.'" *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). That Congress has intended these words to be used in their broad sense is underscored by the fact that it has also used equally liberal language in defining the "State law" that would be preempted. Such laws include "all laws, decisions, rules, regulations, or other State action having the effect of law." § 514(c)(1), as set forth in 29 U.S.C. § 1144(c)(1).

The Supreme Court has explained that "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. Thus, "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *McClendon,* 498 U.S. at 139, 111 S.Ct. at 483. However, the Supreme Court has additionally noted that some laws may affect employee benefit plans in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Thus, while recognizing its general breadth, the Supreme Court has consistently "recognized limits to ERISA's preemption clause." *McClendon,* 498 U.S. at 139, 111 S.Ct. at 483.

The United States Court of Appeals for the Eleventh Circuit has also recognized the limits of ERISA preemption. In *Sanson v. General Motors Corp.,* 966 F.2d 618, 621 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993), the court determined that "a law normally would not be preempted if the statute did not re-

quire the establishment or maintenance of an ongoing plan, or if a statute makes no reference to, or functions irrespective of, a plan."

Thus, it is evident that while ERISA's preemption clause is rather broad, it is not all-encompassing. As noted by the decisions above, courts have consistently determined that some state laws do not "relate to" an ERISA plan. However, the United States Supreme Court and the Eleventh Circuit have not set forth definitive guidelines to determine whether a law "relates to" an ERISA plan. While at least one Circuit has indicated that particular types of state laws "relate to" ERISA plans and are therefore preempted, the Eleventh Circuit has yet to go that far.[1] Instead, the United States Supreme Court and the Eleventh Circuit seem to look to the facts of each case and determine how the state law in question interacts with the ERISA plan. Because pension plan regulation is to be an "exclusively federal concern," the more a plan would be involved in the litigation, the greater the likelihood of preemption. *Alessi,* 451 U.S. at 523, 101 S.Ct. at 1906.

Defendants rely on the Eleventh Circuit opinion in *Farlow v. Union Central Life Ins. Co.,* 874 F.2d 791 (11th Cir.1989), as dispositively rejecting Plaintiffs' claims. In *Farlow,* the plaintiffs alleged that an insurance representative induced them to utilize a different employee health insurance plan by fraudulently or negligently misrepresenting the extent of benefits under the replacement insurance plan. The district court concluded that ERISA preempted the plaintiffs' claims and the Eleventh Circuit agreed. However, in finding that ERISA preempted the plaintiffs' claim, the Eleventh Circuit based its opinion on the fact that "the conduct alleged in these claims [was] not only contemporaneous with [defendant's] refusal to pay benefits, but the alleged conduct [was] intertwined with the refusal to pay benefits." *Id.* at 794.

---

**1.** The Ninth Circuit has held that four types of state laws "relate to" ERISA and are preempted: (1) laws that regulate the type of benefits or terms of ERISA plans, (2) laws that create reporting, disclosure, funding, or vesting requirements, (3) laws that provide rules for calculation of the amount of benefits to be paid under ERISA plans, and (4) laws that provide remedies for

misconduct arising out of the administration of ERISA plans. See *Martori Bros. Distributors v. James–Massengale,* 781 F.2d 1349, 1356–57 (9th Cir.), *amended,* 791 F.2d 799 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385, *and cert. denied* 479 U.S 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986).

In reaching its decision in *Farlow*, the Eleventh Circuit considered its previous holding that ERISA did not preempt an employee's claim of intentional infliction of emotional distress where the claim related only to the termination of employment and not to the denial of benefits. *See Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989). The court, however, distinguished the *Clark* case, noting that the plaintiffs' claims in *Farlow* were directly related to the ERISA plan and its benefits.

*Farlow* is clearly distinguishable from the instant case. The *Farlow* Court focused primarily on the defendants' refusal to pay benefits as establishing the requisite relation between the state law claims and the ERISA plan. In the instant case, however, Plaintiffs' claims are not contemporaneous or intertwined with Defendants' refusal to pay benefits. Similar to *Clark*, Plaintiffs' claims in this case involve alleged misrepresentations or omissions regarding investment advice, wholly unrelated to the ERISA Plan or its benefits. In fact, there is no issue whatsoever regarding the payments or extent of benefits under the Plan.

Defendants do not retreat from their reliance on *Farlow* inasmuch as it stands for the proposition that a state law cause of action "relates to" an employee benefit plan if the employer's conduct giving rise to such claim was not "wholly remote in content" from the benefit plan. *Farlow*, 874 F.2d at 793–94. Nonetheless, Defendants argue that the reasoning relied upon by the Eleventh Circuit in *Farlow* and *Clark* has been "clearly rejected" by the Supreme Court in *McClendon*. Specifically, Defendants contend that simply because pension benefits are not directly involved, Plaintiffs' claim should still be preempted.

The *McClendon* Court held, among other things, that ERISA is not limited to actions solely involving the benefits of a pension plan. The Court pronounced, "it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits." *McClendon*, 498 U.S. at 145, 111 S.Ct. at 486. The Court in *McClendon* reasoned that "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Id.* at 139, 111 S.Ct. at 483. Relying on *McClendon*, Defendants argue that although it may be indirect, Plaintiffs' claims are completely related to an ERISA plan. Most notably, Defendants suggest that because they are pension and employee benefit plan advisors and because their relationship with Plaintiffs historically involved pension-related advice, Plaintiffs' claims are inexorably "related to" an ERISA plan.

This Court recognizes the broad interpretation of ERISA's preemption clause as defined by both the Supreme Court and the Eleventh Circuit. However, it is equally apparent that the mere existence of an ERISA plan, at best tenuously related to the facts underlying the cause of action, is insufficient to preclude litigation on the state law claims.

In *McClendon*, the Supreme Court held that a claim that an employer wrongfully terminated the plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund related to an ERISA plan and was therefore preempted. *McClendon*, 498 U.S. at 141–42, 111 S.Ct. at 484–85. The Court noted that, because "[its] inquiry must be directed to the plan, [the plaintiff's] cause of action 'relate[s] to' an ERISA plan." *Id.* at 140, 111 S.Ct. at 483.

The *McClendon* Court focused on the Congressional intent behind § 514(a) in reaching its conclusion:

> Section 514(a) was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries.

*Id.* at 142, 111 S.Ct. at 484 (citing *FMC Corp.*, 498 U.S. at 60, 111 S.Ct. at 408 (citing *Fort Halifax*, 482 U.S. at 10–11, 107 S.Ct. at 2217–18)); *See Shaw*, 463 U.S. at 105 n. 25, 103 S.Ct. at 2904 n. 25. In the instant case, the Court need not look to the Plan, its benefits or its administration; rather, the

focus of the inquiry is on the nature of Defendants' alleged misrepresentations and omissions regarding their investment advice and their effect on Plaintiffs' ultimate decision.

Recently, the Eleventh Circuit declared that "the mere existence of an ERISA plan is not enough for preemption." *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir.1994). Instead, "the state law in question must make reference to or function with respect to the ERISA plan in order for preemption to occur." *Id.* In *Forbus*, the plaintiffs alleged that they were "forced" to retire and accept the benefits of an early retirement ERISA program. According to the plaintiffs, the defendant threatened to terminate their employment if they did not retire. In reversing the district court's finding of preemption, the Eleventh Circuit found that the plaintiffs' claims centered on the defendants' alleged fraud concerning the elimination of the plaintiffs' jobs, not fraud concerning an ERISA plan or any other benefits package. Further, the court noted that the plaintiffs had not claimed any fraud as it related to the amount of pension benefits received or that the defendants had misrepresented the availability of pension benefits to the plaintiffs.

Similar to *Forbus*, the instant case only tangentially involves an ERISA plan. The crux of Plaintiffs' claim is that they were mislead into making an ill-advised investment. Coincidentally, the ultimate investment involved an ERISA plan rather than some other means of investing monies to diminish one's tax liabilities. Plaintiffs are not seeking any benefits under the Plan, nor do they claim any fraud as it relates to the amount of benefits received or that were potentially available. The applicable state law in the instant case neither makes reference to nor functions with the ERISA Plan. Thus, the state common law on negligent misrepresentation functions wholly independent of the ERISA Plan and its administration.

The Court also considers *Barnet v. Wainman*, 830 F.Supp. 610 (S.D.Fla.1993), where District Judge Stanley Marcus determined that the plaintiffs' state law claims were not preempted by ERISA. In *Barnet*, the plaintiff claimed that an insurance agent had "fraudulently and negligently advised [plaintiff] that his failure to reveal certain pre-existing medical conditions on an application for a health insurance policy would not affect his coverage under the policy." *Id.* at 610–611. When the plaintiff's nondisclosure was discovered, however, he was denied benefits under the policy and brought suit against the defendants for the subsequent damages. As in the present case, the defendants in *Barnet* claimed that the *Farlow* decision was controlling and that ERISA preempted the plaintiff's claims. Judge Marcus disagreed.[2] Distinguishing the *Farlow* decision, Judge Marcus stated:

> [T]he scope of the plan's coverage, which was of central relevance to the litigation in *Farlow*, will not be the focus of the litigation of the fraudulent/negligence claim here. A determination of the Farlows' claim against the agent could not be reached without a threshold comparison of the precise coverage of the two ERISA plans and a particularized finding as to the differences in content. Here, in contrast, the litigation will focus primarily on whether the insurance agent fraudulently advised Barnet to make a representation on the application for insurance, and the nature and exact form of the agent's alleged exhortations.

*Id.* at 612. Thus, of central importance to Judge Marcus was the tenuous relationship between the ERISA plan and the primary focus of the litigation. Because the core of the litigation had little to do with the ERISA plan and its mechanics, the court declined to find preemption.

As previously noted, the instant litigation will focus on whether Zagoria negligently advised Plaintiffs to invest their proceeds from the sale of the hotel into a pension plan that was ill-suited for Plaintiffs' financial abil-

---

**2.** The *Barnet* decision was reached well after the Supreme Court handed down its decision in *McClendon*. Thus, Judge Marcus had the benefit of *McClendon* and its reasoning and nonetheless found that the state law claims were not preempted.

ities and needs. The Plan itself will not be at issue in the litigation. Rather, the litigation must be directed to the nature and extent of Defendants' advice in view of Plaintiffs' purposes for seeking their counsel.

In addition, this Court's finding that Plaintiffs' claims are not preempted does not subject the Plan and Plan sponsors to conflicting directives or administrative burdens. Indeed, this opinion should have little, if any, effect on the administration and regulation of ERISA plans. Thus, this Court's conclusion is consistent with the Congressional intent behind ERISA.

This Court's holding that Plaintiffs' claims are not preempted is supported by decisions from other jurisdictions. In *Airparts Co., Inc. v. Custom Benefit Servs. of Austin,* 28 F.3d 1062 (10th Cir.1994), the Tenth Circuit noted that the state law claims did not attempt to collect or interfere with the calculation of benefits under an ERISA plan. Further, the court found that the state law claims would have no effect on the relations among the traditional plan entities and would not affect the structure, administration, or the type of benefits provided by the plan. *Id.* at 1065–66. The court further observed that the plaintiffs made no claims based upon any rights under the plan and that there was no allegation that any of the plan's terms had been breached in reaching its conclusion that the state law claims did not "relate to" the ERISA plan. *Id.* at 1066.

Similarly, the United States District Court for the District of Kansas in *Countryside Lawn & Tree Care, Inc. v. Porter,* No. 93–1284–PFK, 1994 WL 114302 (D.Kan. March 14, 1994), determined that plaintiff's state law claims were not preempted by ERISA. The court there found that alleged fraudulent misrepresentations as to the nature of an employee benefit plan, which resulted in damages based upon tax penalties and other costs, were not preempted by ERISA. The court noted that the plaintiff's claims did not set forth any fraud associated with the administration of the plan, did not seek any benefits under the plan and that the fraudulent activity occurred prior to any participation in the plan.

Moreover, the Ninth Circuit, relying extensively on the Eleventh Circuit's opinion in *Forbus,* has held that state law claims based on fraudulent misrepresentations were not preempted under ERISA where the alleged fraud concerned tax advice related to lump sum distributions rather than misrepresentations about the plan itself or benefits due. *Farr v. US West, Inc.,* 58 F.3d 1361, 1366 (9th Cir.1995). The Ninth Circuit concluded that, based upon the facts presented, the state law cause of action was too remote a relationship to an ERISA-governed plan for preemption to strike. *Id.*

In the instant case, as in each of the other cases finding no preemption, the state law in question is too tenuous and remote from the ERISA Plan to be said to "relate to" it.

### CONCLUSION

There is ample authority delineating the breadth of the ERISA preemption clause. However, as the United States Supreme Court and several Circuit Courts have reiterated, the mere involvement of an ERISA plan, standing alone, is insufficient to trigger preemption. Whether a particular state law "relates to" an ERISA plan is by no means a simple issue to resolve. "Relates to" has potentially broad ramifications and courts must be careful not to exclude legitimate causes of action simply because an ERISA plan is somehow tied into the facts of a particular case. Thus, it is paramount that courts look to the Congressional intent behind the peremption clause. The Court has done so in this case.

Based upon this Court's reading of the Complaint, the involvement of the ERISA Plan in this litigation is tangential at best. The mere fortuity that the alleged misrepresentations of Defendants involved the Plan is insufficient to cause the preemptive effect of ERISA to control. The focus of this litigation will not be on the ERISA Plan; instead, it will be on the nature of the alleged misrepresentations made. In addition, the resolution of the state law claim will neither determine whether any benefits are paid nor directly affect the administration of the benefits under the Plan. In fact, the benefits of the Plan are irrelevant to this litigation. Ac-

cordingly, the Court finds that Plaintiffs' claim does not "relate to" ERISA and therefore is not preempted.

Furthermore, because these state law claims do not relate to the Plan, this Court need not discuss whether ERISA generally preempts claims relating to an ERISA plan which are brought against nonfiduciaries. *See Mertens v. Hewitt Assocs.*, —— U.S. ——, —— n. 5, 113 S.Ct. 2063, 2068 n. 5, 124 L.Ed.2d 161 (1993).

Finally, the Court notes that this opinion is based upon the premise that Plaintiffs are in fact not claiming damages based upon the amount of benefits they were or were not receiving under the Plan. The Court does not read the Complaint as seeking such damages. However, Plaintiffs' contention that they have suffered damages in the form of "... loss of opportunity in that Plaintiffs were entitled to a reasonable rate of return on their investment ..." is particularly vague. Should it be determined in state court that Plaintiffs are seeking to recover damages based upon what they perceive as an inadequate return from the ERISA Plan, then this Court will revisit the preemption issue. Thus, Defendants are without prejudice to again remove this action to federal court if Plaintiffs are seeking damages based upon the ERISA Plan itself.

Based upon the Court's finding that Plaintiffs' state law claim is not preempted by ERISA, it is

ADJUDGED that Defendants' motion to dismiss is DENIED. It is further

ADJUDGED that Plaintiffs' motion to remand is GRANTED. Finally, it is

ADJUDGED that any other pending motions are DENIED as moot.

DONE AND ORDERED.