**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11167

————————————

STACY HOVAN,

*Plaintiff-Appellant,*

*versus*

METROPOLITAN LIFE INSURANCE COMPANY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-21986-JEM

————————————

Before JILL PRYOR and LUCK, Circuit Judges, and COVINGTON,* District Judge.

---

\* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

COVINGTON, District Judge:

Stacy Hovan sued Metropolitan Life Insurance Company ("MetLife") under the Employee Retirement Income Security Act of 1974 ("ERISA"), challenging MetLife's termination of her long-term disability benefits. The district court granted summary judgment for MetLife and denied summary judgment for Hovan. Hovan appeals, contending that MetLife's termination of her disability benefits was wrong and unreasonable. After careful review, we affirm.

## I.

Hovan was employed as a commercial litigator with Troutman Sanders LLP. She worked in complex litigation, including class actions, intellectual property disputes, and commercial arbitrations. Hovan's job required her to make reasoned decisions, use critical thinking skills, solve complex problems, manage an involved workload, multitask efficiently, and interact appropriately with clients, coworkers, and judges. Hovan's ability to perform these functions came into question when she sought disability benefits in relation to her bipolar disorder diagnosis.

Troutman Sanders provided its employees with long-term disability coverage (the "Plan") through a group policy issued by MetLife. MetLife served as the claims administrator.

Under the Plan, MetLife was required to pay benefits to any covered employee who became and remained disabled. The Plan gave MetLife "discretionary authority to interpret the terms of the

Plan and to determine eligibility for and entitlement to Plan benefits," and further provided that any such interpretation or determination "shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious."

For claimants disabled by a mental or nervous disorder, the Plan authorized up to 24 months of benefits if the claimant was unable to "perform each of the material duties of [her] Own Occupation." The Plan defined "Own Occupation" as:

> [T]he duties that You regularly perform and that provides Your primary source of earned income. For Attorneys, Own Occupation means the specialty in the practice of law in which You were engaged just prior to the date Disability started. Such job is not limited to the specific position You have with the Policyholder or could have with any other employer.

The Plan further specified that "Your Disability benefit pay-ments will end . . . the date You fail to provide required Proof of continuing Disability."

Hovan was first diagnosed with bipolar disorder in 2005, when she experienced two manic episodes requiring hospitalization and treatment with medication. After stabilizing, she discontinued medication in 2007 and later attended law school. Her symptoms did not reappear for several years.

In February 2019, Hovan ceased work due to a mental health crisis stemming from her bipolar disorder. She began treatment

with psychiatrist Dr. Michael Lara, who reported to MetLife that Hovan exhibited "impaired judgment," "poor decision making," mood swings, racing thoughts, and that she was "able to engage in only limited stress situations and . . . limited interpersonal relations." In June 2019, Hovan entered an intensive outpatient program, which she completed the following month.

In late July 2019, MetLife concluded that Hovan was disabled and approved her claim for long-term disability benefits commencing on June 1, 2019.

From September 22, 2020, to October 16, 2020, Hovan was admitted to a partial hospitalization program at PeakView Behavioral Health in Colorado. Upon her discharge, her PeakView psychiatrist, Dr. Sohail Punjwani, concluded she had a "good prognosis." He wrote:

> The patient tolerated all medication changes/increases well with no complaints of side effects. This patient is not at imminent risk nor gravely disabled and safe to discharge. The patient presents today for routine follow up and medication management. The patient has no complaints at this time and reports mood is stable. Patient denies anxiety or depression. Patient denies difficulty falling or staying asleep. Patient denies changes in appetite. Patient denies suicidal or homicidal ideations. Patient denies visual or auditory hallucinations.

After her discharge from PeakView, Hovan began seeing a therapist, Ms. Sherrie Stevens. During multiple sessions with Ms.

Stevens between November 2020 and early March 2021, Ms. Stevens documented fluctuations in Hovan's mood, with occasional reports of depression, mania, and anxiety. Hovan at times mentioned fleeting, passive suicidal thoughts but denied any plan or intent to harm herself. She also admitted to discontinuing medication because she felt it was unnecessary. Despite these reports, Ms. Stevens consistently recorded that Hovan's "functional status" was "intact," her affect was "appropriate," her cognition was "oriented/alert," and her interpersonal functioning was "interactive." Ms. Stevens did not opine on Hovan's occupational limitations or her ability to perform her work as a commercial litigator.

In January 2021, MetLife reviewed Hovan's disability claim and attempted to contact therapist Ms. Stevens. After several unsuccessful attempts to get in touch with Ms. Stevens, and after reviewing the available notes that Ms. Stevens wrote during the therapy sessions, MetLife notified Hovan of its decision to terminate her disability benefits. This decision was effective as of October 16, 2020, the date of her discharge from PeakView.

In July 2021, Hovan requested an administrative appeal of MetLife's decision to terminate disability benefits. MetLife hired a psychiatrist, Dr. Sarah Ghebrendrias, to conduct an independent review of Hovan's medical records. On August 13, 2021, Dr. Ghebrendrias issued her report, which concluded that Hovan was not disabled after her release from PeakView in October 2020. Specifically, Dr. Ghebrendrias wrote:

Based on the information provided, there is no evidence of findings to suggest limitations in her status. All of the claimant's measurable exams indicated depressed and anxious mood but had no evidence of other abnormalities. The claimant reported having passive suicidal ideation but never had plan or intent. In addition, the claimant does not have any measurable evidence of psychomotor agitation, psychosis, delusions, hallucinations, lack of motivation, loss of appetite, homicidality, suicidality (intent or plan), self-destructive behaviors, or involuntary hospitalizations due to a psychiatric emergency. The claimant has not required a higher level of care needed for her psychiatric conditions, and there was no mention of impairment in insight and judg[]ment. Therefore, restrictions and limitations are not supported.

MetLife provided Dr. Ghebrendrias's report to Hovan and invited her to submit additional clinical evidence from her treating providers that would support her claim of continued disability. Hovan, who was represented by counsel, declined to do so and instructed MetLife to "proceed with the appeal determination" without additional information. On August 27, 2021, MetLife denied Hovan's administrative appeal.

Hovan then filed suit in the Southern District of Florida. Both parties moved for summary judgment. After conducting a *de novo* review of the administrative record, the district court upheld MetLife's decision to terminate benefits, finding that the administrator's determination was not wrong. The court

emphasized that Ms. Stevens's therapy notes did not establish that Hovan remained disabled within the meaning of the Plan. The court further found no evidence that Hovan was unable to perform the material duties of her occupation after her release from PeakView. Thus, the court granted summary judgment in favor of MetLife and denied summary judgment for Hovan.

## II.

We "review *de novo* a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." *Blankenship v. Metro. Life Ins.*, 644 F.3d 1350, 1354 (11th Cir. 2011). We also review *de novo* a district court's grant of summary judgment. *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th Cir. 1994). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

ERISA authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

We have recognized that ERISA itself is "silent on which standard of review applies to actions challenging adverse benefit determinations. However, the Supreme Court has established a framework for determining the proper standard for reviewing ERISA cases." *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access*

*Plan*, 833 F.3d 1299, 1311 (11th Cir. 2016) (first citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); then citing *Metro. Life Ins. v. Glenn*, 554 U.S. 105 (2008)). "In an ERISA case, the standard of review for summary judgment depends on whether the administrator had discretion to deny a claim." *Id*. "[A] denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . . [I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (citation modified).

In accordance with this framework, we apply the following six-step test to determine which standard is appropriate in a given case:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims,

then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355.

Crucially, under ERISA and the *Blankenship* framework, the plaintiff bears the burden of proving her entitlement to contractual disability benefits. *See Glazer v. Reliance Standard Life Ins.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (citing *Horton v. Reliance Standard Life Ins.*, 141 F.3d 1038, 1040 (11th Cir. 1998)).

## III.

Applying the *Blankenship* framework, we conclude that MetLife's decision to terminate Hovan's benefits was not *de novo* wrong.

For the period after Hovan's release from PeakView on October 16, 2020, the only evidence that Hovan submitted to MetLife in support of her continued claim of disability was the

therapy notes from her sessions with Ms. Stevens. Upon review, we conclude that Ms. Stevens's therapy notes do not show that Hovan was still disabled and unable to work as a commercial litigator after her release from PeakView.

At most, the therapy notes from Ms. Stevens reflect that Hovan experienced symptoms consistent with bipolar disorder. But the notes did not identify any occupational restrictions or cognitive impairments precluding Hovan from working as a commercial litigator. Nor do Ms. Stevens's notes indicate that Hovan's symptoms were not adequately controlled. By contrast, Dr. Lara's 2019 records (the basis for MetLife's initial benefits approval) explicitly described impairments to Hovan's judgment, decision-making ability, interpersonal functioning, and stress tolerance, all critical to her occupation as a commercial litigator. No similar observations appear in Ms. Stevens's notes.

To be clear, certain of Ms. Stevens's therapy notes are troubling. Specifically, Hovan reported passive suicidal ideation in a few therapy visits with Ms. Stevens. Passive suicidal ideation, distinguished from active suicidal ideation, "refers to a situation in which the patient may think about or wish for death but harbors no intent or plan to harm herself." *Alexandra H. v. Oxford Health Ins., Inc.*, 763 F. App'x 865, 869 (11th Cir. 2019) (unpublished); *see also Bankhead v. Shulkin*, 29 Vet. App. 10, 20 (Vet. App. 2017) ("[P]assive suicidal ideation entails thoughts such as wishing that you were dead, while active suicidal ideation entails thoughts of self-directed violence and death.").

On this record, we find that Hovan's reported passive suicidal ideation during certain therapy sessions—although concerning—did not prevent her from performing her duties as a commercial litigator. Hovan's suicidal thoughts were described as "fleeting" and were reported in only a few visits. Furthermore, Ms. Stevens consistently noted that Hovan's "functional status" was "intact," her affect was "appropriate," her cognition was "oriented/alert," and her interpersonal functioning was "interactive." While we recognize that Hovan had serious mental health concerns, including "occasional reports of depression, mania, and anxiety," Ms. Stevens's therapy notes, as a whole, do not indicate that Hovan was unable to perform her duties as a commercial litigator.

Given the limited evidentiary record, MetLife and the district court both properly concluded that Hovan no longer met the Plan's definition of "disabled" after her release from PeakView. It was Hovan's burden to demonstrate continuing disability, and the record she provided did not satisfy that burden. Accordingly, our inquiry ends here, as Hovan's appeal fails at the first step of the *Blankenship* framework.

Hovan raises several arguments to the contrary. Each is unpersuasive.

First, Hovan contends that MetLife improperly required a treating provider to opine explicitly on her work capacity. Not so. MetLife merely required evidence establishing Hovan's inability to perform her occupational duties as a commercial litigator. That

evidentiary burden squarely rested on Hovan under the terms of the Plan, and thus it was proper for MetLife to require Hovan to provide such evidence. It bears noting that Hovan declined MetLife's invitation to submit additional medical evidence and instructed MetLife to proceed on the administrative appeal without it. Hovan made no effort to supplement the record with supporting documentation despite knowing MetLife considered Ms. Stevens's therapy notes insufficient to establish disability.

Second, Hovan criticizes MetLife for relying on "the opinion of a medical file-reviewer who . . . gave no consideration to the duties or demands of the occupation." As an initial matter, a plan administrator may rely on the opinions of a medical file-reviewer, even though the file-reviewer has not examined the patient. *See Blankenship*, 644 F.3d at 1357 ("[W]e do not conclude, as the district court did, that MetLife's use of 'file' reviews by its independent doctors—instead of live, physical examinations of Blankenship—counted as evidence that MetLife acted arbitrarily and capriciously, particularly in the absence of other troubling evidence."). Further, though Dr. Ghebrendrias's report did not specifically discuss Hovan's work as a commercial litigator, the report did discuss in detail Hovan's symptoms and their effect on her functioning generally. The report specifically noted that there was no evidence of "lack of motivation" or "impairment in insight and judg[]ment," which are important attributes for a commercial litigator.

Regardless, Hovan's argument is unpersuasive because it attempts to shift Hovan's burden to MetLife. The crux of the

benefits termination was the insufficiency of therapist Ms. Stevens's notes to establish Hovan's continued disability. The burden was not on MetLife to provide a report conclusively ruling out that Hovan was disabled.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment for MetLife and denial of summary judgment for Hovan.

**AFFIRMED.**