The opinion of June 20, 1997, is withdrawn, and the following is substituted therefor.
This fraud case arises from the alleged promises of Steve Floyd, the manager of Tire Pro, Inc., to Mary B. Washington concerning the sale of tires and automobile repairs and the alleged willful misrepresentation by Tire Pro that it was a "Goodyear Certified Auto Service" center — that Goodyear Tire Rubber Company ("Goodyear") "stood behind" Tire Pro's service. After paying $63 for several hundred dollars worth of tires and repairs, Washington sued Floyd, Tire Pro, and Goodyear, which had allowed Tire Pro to use its name in connection with certain of its services. Washington settled with Tire Pro and Floyd, and won a $187,500 judgment against Goodyear, based on a jury verdict. Goodyear appealed, arguing, among other things, that Washington failed to present substantial evidence of promissory fraud and failed to present substantial evidence that Tire Pro had an agency relationship with Goodyear. We conclude that there was not substantial evidence of promissory fraud, but that there was substantial evidence of an agency relationship. Because Goodyear did not in its directed verdict motion argue with specificity the lack of evidence on the promissory fraud claims (the "bad counts"), we affirm.
Viewed most favorably to Washington, the evidence tends to show the following: Washington visited the Tire Pro store in 1992. After she was approved for credit, Washington told Floyd, the manager, that she wanted two tires that cost "30 something dollars" each for her daughter's automobile and two for her husband's automobile. Washington also agreed to a "Goodyear Courtesy Service Checkup," but she contends that she told Floyd not to do anything to her daughter's automobile until he had telephoned Washington for approval. Floyd obtained Washington's home and work telephone numbers.
Washington went home and told her husband, Robert, and her daughter, Willie, to go to Tire Pro and have two tires installed on each of their respective automobiles. Robert had tires installed on his automobile and signed an invoice for approximately $120. Washington makes no complaint about Tire Pro's sales and service with respect to Robert's automobile.
The next day, Willie went to Tire Pro. Willie testified that she told Tire Pro's assistant manager that she wanted "some white lettered tires." Willie also testified that while she was waiting for her automobile, a Tire Pro employee told her that her mother had telephoned and said that Tire Pro could "fix everything." Tire Pro installed two tires that had raised white letters and cost $67.95 each, and it also performed various repairs. When Tire Pro finished the work on her automobile, Willie signed an invoice for approximately $515.
Willie testified that she gave the invoice to her mother the next day. When she received the invoice, Washington did not have her daughter return the more expensive tires, did not return to Tire Pro herself to complain, and did not telephone Tire Pro to complain. Instead, when she received her credit card bill, Washington wrote a letter to Goodyear's credit agency, stating that she did not think she should have to pay for the charges and contending that she did not authorize the work. After receiving advice from her attorney, Washington paid $63 of the $641.73[1] balance due on the credit card. *Page 776 
Goodyear's credit agency sent Washington a letter stating that it had reviewed her dispute and had found "no conclu[sive] evidence of wrongdoing by the store."
Washington sued. She alleged, among other things: (1) that Floyd had fraudulently promised to have Tire Pro install "30 something dollar" tires on Willie's automobile; (2) that Floyd had fraudulently promised to have Tire Pro telephone Washington before making any repairs on Willie's automobile; and (3) that Goodyear had willfully misrepresented that Tire Pro was a "Goodyear Certified Auto Service" center. Washington also argued that Goodyear was liable for Floyd's alleged fraudulent promises because, she claimed, Tire Pro was Goodyear's agent.
Before trial, Tire Pro and Steve Floyd settled with Washington for $62,500. The case went to trial against Goodyear. Goodyear filed a motion for a directed verdict at the close of Washington's evidence, and it filed another such motion at the close of all the evidence. The trial court denied both motions. The jury returned a general verdict for Washington, assessing compensatory damages of $100,000 and punitive damages of $150,000. The court denied Goodyear's motion for a judgment notwithstanding the verdict. The court entered a judgment against Goodyear for $187,500 ($250,000 minus the pro tanto settlement of $62,500).
 I. Promissory Fraud
Goodyear argues that Washington failed to present substantial evidence of promissory fraud on the part of Tire Pro. To be entitled to a directed verdict, it was sufficient for Goodyear to show that, as to any of the elements of promissory fraud, Washington failed to present substantial evidence. Hosea v.Weaver Sons, Inc. v. Towner, 663 So.2d 892, 894
(Ala. 1995). The elements of fraud are (1) a misrepresentation, (2) of a material existing fact, (3) on which the plaintiff relied, and (4) which proximately caused injury or damage to the plaintiff. Johnston v. Green Mountain, Inc.,623 So.2d 1116, 1121 (Ala. 1993). Also, to support a claim of promissory fraud, the plaintiff must show that at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or acts promised, but intended to deceive the plaintiff. Id.
The burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive. Martin v.American Medical Int'l, Inc., 516 So.2d 640 (Ala. 1987);P S Bus., Inc. v. South Cent. Bell Tel. Co.,466 So.2d 928 (Ala. 1985). The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud. Purcell Co. v. Spriggs Enterprises, Inc.,431 So.2d 515, 519 (Ala. 1983). It is well settled that "a jury does not have untrammeled discretion to speculate upon the existence of [the requisite] intent [for promissory fraud]." There must be substantial evidence of a fraudulent intent that existed when the promise was made. Martin, 516 So.2d at 642 (quotingPurcell Co., 431 So.2d at 519).
Beyond simply showing that Tire Pro's alleged promises regarding the price of the tires and the securing of approval for repairs were not fulfilled, Washington's evidence consists only of Willie's testimony that a Tire Pro employee said Washington had approved the repairs, and the invoices that Robert and Willie, instead of Washington, had signed relating to services performed on their respective vehicles. This is not substantial evidence indicating that Tire Pro, at the time it made promises to Washington, had the present intent not to perform those promises.
Washington's evidence does not include direct documentary evidence, or direct testimony, indicating that Tire Pro's manager, Floyd, intended not to fulfill the promises made to Washington, nor does it include indirect evidence of similar promises made to Washington or to others. See PurcellCo., 431 So.2d at 519 (holding no sufficient evidence of promissory fraud was shown, in part because of the absence of direct statements indicating present intent to defraud).[2] In *Page 777 B.K.W. Enterprises, Inc. v. Tractor EquipmentCo., 603 So.2d 989, 992 (Ala. 1992), we held that evidence of a series of distinct, but consistent, promises by a lessor to delay or waive lease payments provided substantial evidence of a present intent to deceive regarding the plaintiff-lessee's ultimate liability for the lease payments. Here, there was no evidence that Tire Pro engaged in a consistent pattern of purposefully making distinct unkept promises to Washington or to other customers. On the contrary, the only other separate transaction Tire Pro had with Washington concerned the installation of tires on Robert's automobile, a transaction for which Washington does not contest that Tire Pro provided good, fair, and timely service.
Further, the fact that Robert and Willie, instead of Washington, signed the invoices merely shows that Tire Pro, like any reasonable business, wanted the customer, or her representative, to approve work done before taking the automobile from the business premises. See Harris v.McDavid, 553 So.2d 567, 569 (Ala. 1989) (observing, in part, that actions not inconsistent with the fulfillment of a challenged promise do not support a finding of a present intent not to fulfill the promise). Thus, we hold that Washington failed to present substantial evidence from which a jury could reasonably infer that Floyd intended to deceive her at the time he made the promises.
 II. Agency
Goodyear also contends that Washington failed to present substantial evidence of an agency relationship between it and Tire Pro. Thus, Goodyear concludes that it is not liable for the actions of Tire Pro's employees, including any willful misrepresentation by those employees regarding Tire Pro's status as a "Goodyear Certified Auto Service" center. We disagree.
Washington introduced evidence indicating: (1) that Goodyear knowingly allowed and encouraged Tire Pro to use Goodyear signs and to sell Goodyear products; (2) that Goodyear knowingly allowed Tire Pro to represent to customers, through logos on its invoices, that it was a "Goodyear Certified Auto Service" center; (3) that Goodyear's dealer sales manager testified that Goodyear intended for Tire Pro's customers to believe they were dealing with a Goodyear establishment; (4) that the tires sold to Washington's daughter were "Goodyear Eagles"; and (5) that the repairs effected on Washington's daughter's car were performed by Tire Pro as a "Goodyear Certified Auto Service" center. These combined showings constitute substantial evidence of an apparent agency relationship between Goodyear and Tire Pro. See generally Malmberg v. American Honda MotorCo., 644 So.2d 888, 890-91 (Ala. 1994) (holding that manufacturer's providing signs, logos, and literature to dealer and its knowing involvement with dealer's sale of its products under warranty established substantial evidence of an apparent agency relationship on which the manufacturer could be obligated to stand behind the dealer's representation regarding the manufacturer's warranty).
Goodyear also cites § 6-11-20, Ala. Code 1975, for the proposition that even if there is substantial evidence that it had an agency relationship with Tire Pro, there is not "clear and convincing" evidence of such an agency relationship, and, thus, the award of punitive damages was error.[3]
Section 6-11-20, however, does not require that evidence of an agency relationship (which is, of course, not wrongful in and of itself) be clear *Page 778 
and convincing. Section 6-11-20 requires that evidence of the wrongful conduct — the willful misrepresentation — be clear and convincing. On appeal, however, Goodyear failed to challenge directly whether Washington presented clear and convincing evidence (or even substantial evidence) to support her underlying claim of willful misrepresentation regarding Tire-Pro's status and obligations as a "Goodyear Certified Auto Service" center, and what harm, if any, that misrepresentation caused her. Accordingly, these issues are not properly before this Court, and we do not address them. See Ex parteRiley, 464 So.2d 92, 94 (Ala. 1985) (stating that an appellate court will not address an issue not argued in the briefs on appeal); Kennesaw Life Acc. Ins. Co. v. OldNat'l Ins. Co., 291 Ala. 752, 754, 287 So.2d 869, 871
(1973) (stating that an issue first raised in a reply brief will not be addressed on appeal); Lunney v. Southern Ry.,272 Ala. 611, 612-13, 133 So.2d 247, 249 (1961) (same).[4]
In its motion for a directed verdict, Goodyear did not challenge the "bad counts" — the promissory fraud counts — with specificity. Thus, because the jury returned a general verdict, we presume that the verdict was returned on the "good count" — willful misrepresentation. See SouthCent. Bell Tel. Co. v. Branum, 568 So.2d 795, 798 (Ala. 1990); Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981). Therefore, we affirm the judgment for Washington.
APPLICATION GRANTED; OPINION OF JUNE 20, 1997, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, HOUSTON, and COOK, JJ., concur.
BUTTS, J., recuses himself.
[1] This amount was the sum of the charges for tires and repairs done on Willie's automobile ($515.31), the charges for the tires for Robert's car ($120.76), and a charge for credit insurance ($5.66).
[2] We note that in Purcell, 431 So.2d at 519, we held, applying the "scintilla rule" of evidence, that there was not sufficient evidence to find an intent to deceive at the time the promise was made. Since Purcell, Alabama has abandoned the scintilla rule in favor of the significantly higher evidentiary standard embodied in the "substantial evidence" rule. See Ala. Code 1975, § 12-21-12; Brown v.Gamble, 537 So.2d 476, 477 (Ala. 1989) (stating that cases filed after June 11, 1987, are subject to the substantial evidence rule instead of the scintilla rule).
[3] Ala. Code 1975, § 6-11-20, provides in pertinent part:
 "(a) Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."
(Emphasis added.)
[4] Goodyear also argues that the jury's award of $100,000 in compensatory damages was excessive because, it argues, Washington failed to present sufficient evidence of mental anguish. Our review of the record convinces us that the jury did not abuse its discretion in awarding damages for mental anguish. See Alabama Power Co. v. Mosley, 294 Ala. 394, 401,318 So.2d 260, 265 (1975); Birmingham Elec. Co. v.Thompson, 251 Ala. 465, 466, 37 So.2d 633, 634 (1948).