809 So.2d 785 (2001)
Debbie ALDRIDGE et al.
v.
DAIMLERCHRYSLER CORPORATION.
1981622.
Supreme Court of Alabama.
April 13, 2001.
Dissenting Opinion on Overruling of Application for Rehearing July 13, 2001.
*788 Richard F. Ogle of Schoel, Ogle, Liles & Upshaw, L.L.P., Birmingham; Douglas J. Centeno of Benton & Centeno, L.L.P., Birmingham; and J. Zach Higgs, Jr., Huntsville, for appellants.
Charles A. Powell III, David W. Proctor, and Brian R. Bostick of Johnston, Barton, Proctor & Matthew C. McDonald of Miller, Hamilton, Snider & Odom, Mobile, for appellee.
PER CURIAM.
This case involves two issues: (1) whether fraudulent-misrepresentation claims regarding a program outlined in a collective-bargaining agreement are preempted from adjudication in a state court and (2) whether an employee can maintain breach-of-contract and promissory-fraud claims when the employment was subject to the employment-at-will doctrine and the employee is claiming lost wages and benefits as damages.

Facts and Procedural History
The 32 appellants (Debbie Aldridge, Nina Allen, Brenda Armstrong-White, Tula Wade Battle, Deborah Billions McKeown, Patsy Boldin, Cynthia Bousson, Betty Brown, Detra Campbell, Betty L. Craft, Sherry Davis, Daniel Dayton, Janice Esslinger, Susan Esslinger, Joyce Fearn, Mary Fitchard, Margaret Gordon, Deborah Grantham, Ina Guger, Brenda Hammonds, Joe Johnson, Olivia Jolly, Kenneth Lovell, Linda Faye Nash, Rebecca A. Bain Nave, Julia M. Patton, Jamie Owens Ponder, Katherine Reed, Doris Segars, Ethel Evelene Shaw Sutton, Susie M. Thompson, and Janice Whitman), who will be collectively referred to hereinafter as "the employees," were employees of Daimler-Chrysler Corporation ("Chrysler") at its Huntsville production facility. Each of the employees worked on the production line and each was classified as a "Tech III." Their seniority ranged from a few years to 17 years.
In the summer of 1990, amid rumors that Chrysler was having financial difficulties and rumors that a large-scale layoff might take place, Chrysler offered eligible employees a "voluntary termination of employment program" ("VTEP"). The VTEP was an agreement negotiated by Chrysler and the United Automobile Workers Union ("UAW"), and it was included in the collective-bargaining agreement ("CBA") to which the employees were subject; it was jointly administered by Chrysler and the UAW. To be eligible to participate in the VTEP, an employee must have had at least one year of seniority and must have been ineligible to retire under the provisions of the Chrysler Pension Plan. If an employee met these criteria and elected to take the benefits of the VTEP, the participating employee could *789 leave his employment and receive a guaranteed payment based upon his seniority. Finally, the VTEP provided that if any employee participating in the VTEP was subsequently reemployed by Chrysler, he would be ineligible to participate in the VTEP again for five years following the reemployment. The VTEP outlined in the CBA contained no reference to an employee's right to be rehired if he chose to take the benefits of the VTEP.
On August 28, 1990, Chrysler held a meeting to discuss the VTEP with eligible employees. At the meeting, Chrysler distributed a document explaining the VTEP.
Some of the employees attended the VTEP meeting, and some did not. The record indicates that the employees' interpretations of the statements made by the Chrysler representatives at this meeting, or at later dates, vary. Sixteen employees alleged that they were promised preferential rehire rights by an unidentified Chrysler representative at a VTEP meeting in August 1990.[1] Ten employees testified that Sarah Howard or another Chrysler human-resources manager promised them preferential rehire rights or promised them that they would be considered for reemployment whenever Chrysler began rehiring.[2] Three employees testified that coworkers told them of the promise of preferential rehire rights allegedly made at the VTEP meeting in August.[3] Employee Cynthia Bousson testified that her union representative told her of the preferential rehire rights. An unidentified company representative was alleged to have promised preferential rehire rights to employee Detra Campbell when she signed her VTEP application in August 1990. Finally, employee Julia M. Patton testified that although no one ever promised her preferential rehire rights or future employment, she had "assumed" that she would be able to come back.
All of the employees in this case participated in the VTEP offered by Chrysler in 1990. The employees contend that they relied on a promise of preferential rehire rights or of consideration for future employment and that in reliance on that promise voluntarily resigned their positions, thereby breaking their seniority with Chrysler. In exchange for their participation, the employees received lump-sum payments that ranged from $12,000 to $65,000.
In 1994, Chrysler began hiring 60 to 65 new employees because of an increase in production. Upon receiving inquiries regarding a rehire of those employees who had participated in the VTEP, Sarah Howard, the employment supervisor in the Human Resources Department of the Huntsville Plant, telephoned Bob Morgan in the *790 Corporate-Union Relations Department to determine whether the VTEP participants could be rehired. Morgan told Howard that a VTEP participant could be rehired only if no other skilled person was found, or if the VTEP participant had enhanced his skills. No employee who had participated in the VTEP in 1990 was considered for the new positions.
Because they had not been considered and/or rehired in 1994, the employees sued Chrysler in the Madison Circuit Court, on March 26, 1996, seeking damages on theories of promissory fraud, breach of contract, and promissory estoppel.[4] Chrysler timely removed the case to the United States District Court for the Northern District of Alabama, on the ground that the employees' state-law claims were preempted by § 301 of the Labor Management Relations Act ("LMRA"). Specifically, Chrysler alleged that the VTEP was provided for in the CBA; thus, it argued, only a federal court had jurisdiction to decide the issues. In its memorandum and order remanding the case, the federal court stated that the employees were not complaining about the administration of the VTEP; rather, it said, they were claiming they had been induced to accept the VTEP because of a fraudulent misrepresentation that was unrelated to the program itself. Because neither the CBA nor the VTEP documents before the federal court contained any provision squarely addressing the issue of the employees' claimed right of rehire, the federal court determined that it did not have jurisdiction over the case and remanded it to the Madison Circuit Court.
In the state court, after the parties had conducted discovery, Chrysler moved for a summary judgment. In addition to arguing that the employees' state-law claims were preempted by § 301 of the LMRA, §§ 7 and 8 of the National Labor Relations Act ("NLRA"), and the Employees' Retirement Income Security Act ("ERISA"), Chrysler argued that the employees' breach-of-contract claim was barred by the employment-at-will doctrine. Chrysler further contended that the promissory-estoppel doctrine could not be applied to create a contract for preferential rehire rights or for consideration for future employment. Finally, Chrysler argued that the employees could not establish a cause of action for promissory fraud. On May 10, 1999, the trial court entered a summary judgment in favor of Chrysler on all three of the employees' claims, breach of contract, promissory estoppel, and promissory fraud. The employees appeal from that summary judgment.

Analysis
Because this appeal is from a summary judgment, we review the case de novo. EBSCO Indus., Inc. v. Royal Ins. Co. of America, 775 So.2d 128 (Ala.2000). We review the judgment by the same standard the trial court used in determining whether the evidence presented demonstrated the existence of a genuine issue of material fact. Jefferson County Comm'n v. ECO Preservation Servs., L.L.C., 788 So.2d 121 (Ala.2000) (quoting Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988)). Once the movant establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. *791 Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw. Jefferson County Comm'n v. ECO Preservation Servs., L.L.C., supra, 778 So.2d at 126 (citing Renfro v. Georgia Power Co., 604 So.2d 408 (Ala.1992)).
Chrysler argues that state-court adjudication of the employees' claims is preempted by federal law. In its order remanding the case to the Madison Circuit Court, the federal court concluded that federal law did not preempt state adjudication of the employees' claims. Although Chrysler's preemption argument to the federal court was based only on preemption under § 301 of the LMRA, Chrysler presented three grounds for preemption in its summary-judgment motion filed in the Madison Circuit Court. After reviewing the record and the federal caselaw regarding preemption in all three areas, we conclude that the employees' state-law claims are not preempted by federal statutes.
Chrysler first argues that the employees' claims are preempted by § 301 of the LMRA.[5] In considering preemption under § 301, the United States Supreme Court has stated that "when `[t]he heart of the [state-law] complaint [is] a ... clause in the collective bargaining agreement,' that complaint arises under federal law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 394, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citation omitted). However, if a complaint "is not substantially dependent upon interpretation of the [CBA]," then "`it would be inconsistent with congressional intent ... to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" Caterpillar, 482 U.S. at 395, 107 S.Ct. 2425 (citations omitted) (emphasis added).
Although the VTEP is provided for in the CBA, the employees' claims are not founded upon an interpretation of the VTEP as it is written. Rather, the employees' claims arise from statements they say were made to them outside the CBA. Because a determination of the employees' claims is not "substantially dependent" upon an interpretation of the CBA, the state-court action was not preempted by § 301.
Chrysler also argues that the employees' claims are preempted by §§ 7 and 8 of the NLRA.[6] The United States Supreme Court has ruled that the states are preempted from hearing a matter if the activity alleged is "arguably" subject to § 7 or § 8 of the NLRA. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Chrysler argues that the VTEP could be created or modified only by collective bargaining; otherwise, it says, an unfair labor practice violation would exist. However, the dispute in this case does not arise from the VTEP as presented in the CBA; it results from the extraneous statements allegedly made concerning the VTEP. Based on these facts, we conclude that the dispute does not arise out of a protected concerted activity or an unfair labor practice. *792 Thus, the state-law claims were not preempted by §§ 7 and 8 of the NLRA.
Finally, Chrysler argues that the state-court action was preempted by ERISA. Two kinds of preemption are available with regard to ERISA: superpreemption and defensive preemption. Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1211-12 (11th Cir.1999). Superpreemption occurs when four conditions are met: (1) there is a relevant ERISA plan; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint states a claim for benefits due under the plan. Butero, 174 F.3d at 1212. Because the complaint here does not state a claim for benefits provided in the ERISA plan, superpreemption does not exist. Therefore, we must determine whether defensive preemption of the employees' claims exists.
Defensive preemption originates in ERISA's express preemption provision and "defeats claims that seek relief under state-law causes of action that `relate to' an ERISA plan." Butero, 174 F.3d at 1215. "`[A] law "relates to" an [ERISA] plan ... if it has a connection with or reference to such a plan.'" Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir.1994) (citation omitted). However, "the mere existence of an ERISA plan is not enough for preemption." Forbus, 30 F.3d at 1405. The state law must make reference to or function with respect to the ERISA plan for preemption to occur. Forbus, 30 F.3d at 1405.
In Forbus, supra, the United States Court of Appeals for the Eleventh Circuit was confronted with a case that had facts similar to those before us now. That case arose in Alabama. Sears Roebuck & Company told its employee Forbus and others that it was closing the warehouse where they worked. Relying on Sears's statement that they must either accept a retirement-incentive package or else be fired when the facility closed, they voluntarily resigned their employment. However, rather than closing the warehouse where the employees worked, Sears simply reorganized its operation at the site; when the employees requested reinstatement, they were told that their positions were no longer available. Forbus and the other employees filed a fraud action against Sears in the federal district court. The district court entered a summary judgment for Sears on the ground that the fraud claims were preempted by ERISA, but the Eleventh Circuit reversed that ruling, stating:
"[T]he plaintiffs' claims in this case center on Sears' alleged fraud concerning the elimination of the plaintiffs' jobs, not fraud concerning an ERISA plan or any other benefits package. The plaintiffs have not claimed any fraud as it relates to the amount of pension benefits received, nor have the plaintiffs made any allegation that Sears misrepresented the availability of pension benefits to the plaintiffs. Simply put, the plaintiffs contend that Sears lied when it informed them that their jobs were being eliminated."
Forbus, 30 F.3d at 1406. Because the Alabama fraud statute did not require the establishment or maintenance of an ongoing plan, made no reference to an ERISA plan, and functioned irrespective of any plan, the Eleventh Circuit held in Forbus that the employees' state-law claims of fraud were not preempted by ERISA.
Likewise, in the case before us, the employees' claims of fraud are not related to the amount of pension benefits they received under the VTEP. Their claims are that Chrysler breached the oral contract they say it made regarding preferential rehire of the employees and that it fraudulently misrepresented that the VTEP provided for preferential rehire rights. Because the employees make no *793 claims regarding the benefits available, or paid, under the VTEP, their claims are not preempted by ERISA.
We consider now the merits of the employees' breach-of-contract, promissory-estoppel, and promissory-fraud claims. The court entered a summary judgment against all three claims.

Breach of Contract
The employees recognize that no breach-of-contract action can be based on a contract for employment that is terminable "at will." They argue, however, that the oral promise they say Chrysler made constituted an offer of "permanent employment." We disagree.
Alabama law is clear that an oral employment contract containing no specifics regarding term, length, or duration of employment is an employment-at-will contract. Hickenbottom v. Preferred Risk Mut. Ins. Co., 514 So.2d 881, 882 (Ala.1987); Bates v. Jim Walter Res., Inc., 418 So.2d 903, 905 (Ala.1982). "[E]mployment contracts without a fixed term of employment are terminable at the will of either party and may be terminated for good cause, bad cause, or no cause at all."[7]Bates, 418 So.2d at 905; see also Hickenbottom, 514 So.2d at 882. The general rule is that "an indefinite hiring is presumed to be at the will of either party, in the absence of custom or facts showing a contrary intention." Alabama Mills, Inc. v. Smith, 237 Ala. 296, 299, 186 So. 699, 702 (1939).
While some of the employees contended they were promised preferential rehire rights, others testified that they were promised merely that they would be considered for employment once Chrysler began rehiring workers for the Huntsville plant. The record contains no evidence indicating a time frame for this promise, what kind of employment would be involved, the duration of this employment, or the requirements of the employment. Thus, the alleged promise was one for "an indefinite hiring." Alabama law clearly provides that a promise of this nature creates an employment-at-will contract.
The employees argue that Chrysler's promise of preferential rehire rights or of consideration for future employment was not subject to the employment-at-will doctrine; rather, they contend that the oral promise constituted an offer of "permanent employment." "Permanent employment" is defined as employment that is guaranteed so long as the employer is engaged in the same kind of business and needs the service of the employee performing it and the employee is able and willing to perform the job satisfactorily and gives no cause for his discharge. Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699, 701 (1939).
The fact situation in Bates v. Jim Walter Resources, Inc., 418 So.2d 903 (Ala.1982), was very similar to the fact situation presented here. Bates appealed to this Court from a summary judgment that had been entered in favor of Jim Walter Resources ("JWR") for breach of an oral employment contract, which "specified no particular term, period, or duration of employment." Bates, 418 So.2d at 904. JWR offered Bates a job in January 1981; before she started work, however, JWR underwent a hiring freeze, which caused it to terminate the employment offer. Because Bates had resigned her previous job to take the JWR job, she sued JWR, alleging breach of contract. That case was very similar to *794 the present case, because Bates asserted that the principle of promissory estoppel applied to create a binding contract between Bates and JWR, which was breached when JWR withdrew its employment offer. Citing Alabama Mills, Bates argued that the employment-at-will doctrine should not apply where an employee gives up a thing of value to accept employment. However, this Court distinguished the Bates case from Alabama Mills, stating that because no understanding, agreement, or promise had existed between Bates and JWR as to the term, length, or duration of her employment with JWR, Bates had not been offered a contract for permanent employment. Bates, 418 So.2d at 906.
Making an argument similar to the one made in Bates, the employees here contend that the permanent-employment doctrine should apply because, they say, they gave up their seniority, benefits, and continued employment in exchange for Chrysler's promise of preferential rehire rights or consideration for future employment. However, no evidence in the record indicates that Chrysler made an actual offer of employment, much less that any offer set out the term, length, or duration of any employment being offered. The evidence from the employees themselves indicated that Chrysler simply promised preferential rehire rights or that the employees would be considered for future employment, once the company started rehiring workers for the Huntsville plant. Additionally, under the terms of the CBA, Chrysler maintained the right to fire any employee during the first 30 days of employment regardless of an employee's status as a new employee or as a rehired employee. Thus, any employee rehired would have been an at-will employee, not a permanent employee. Therefore, Chrysler's alleged offer was not an offer of permanent employment, and any promise regarding future employment would fall within the scope of the employment-at-will doctrine. The summary judgment is affirmed as to the breach-of-contract claim.

Promissory Estoppel
When one seeks to impose liability under the doctrine of promissory estoppel, we look to the facts to determine whether that doctrine can be used to create liability, once we have determined that no binding contract existed.
This Court addressed the application of the promissory-estoppel doctrine in Bates, supra. Quoting our opinion in Ivey v. Dixon Investment Co., 283 Ala. 590, 219 So.2d 639 (1969), we stated that "estoppel cannot operate to create binding effect against a party under circumstances which would not sustain a contract if one had been made." Bates, 418 So.2d at 905. Because in that case it was undisputed that the alleged agreement between Bates and JWR did not provide for the term, period, or duration of the employment contract, this Court affirmed the summary judgment for the defendant. Bates, 418 So.2d at 906.
As discussed above, the oral promises alleged to have been made in this case did not concern an offer of employment; rather, the plaintiffs alleged that Chrysler made a general promise of preferential rehire rights or of consideration for future employment. No evidence indicates the term, length, or duration of any employment the plaintiffs claim was to be based on Chrysler's alleged promise. Because the doctrine of promissory estoppel cannot be used to create liability against a party under circumstances that would not sustain a contract if one had been made, the trial court properly entered the summary judgment as to the promissory-estoppel claim; as to that claim, the judgment is affirmed.

*795 Promissory Fraud

To establish their claim of promissory fraud, the employees were required to prove: (1) that Chrysler made a misrepresentation in the form of a promise, (2) that the misrepresentation concerned a material existing fact, (3) that the employees relied on the misrepresentation, (4) that the reliance proximately caused the injury or damage alleged, and (5) that when Chrysler made the promise, it intended not to perform the act promised, but intended to deceive the employees. See Ex parte Grand Manor, Inc., 778 So.2d 173 (Ala.2000) (citing Goodyear Tire & Rubber Co. v. Washington, 719 So.2d 774, 776 (Ala.1998)). Chrysler specifically argues that the trial court properly entered the summary judgment on this claim because, Chrysler says, the employees failed to present substantial evidence to prove Chrysler acted with a fraudulent intent and failed to present substantial evidence indicating they suffered damage as a result of the alleged fraud. In addition to these general arguments that are applicable to all 32 employees, as to the promissory-fraud claims of certain plaintiffs, Chrysler also argues independent grounds that it says made the summary judgment proper.
First, Chrysler asserts that the summary judgment was proper because, it says, the employees presented no substantial evidence indicating that Chrysler acted with a fraudulent intent. Alabama law is clear that a plaintiff alleging promissory fraud has the burden of proving that, at the time the promise was made, the defendant intended to deceive the plaintiff. Goodyear Tire & Rubber Co. v. Washington, supra, 719 So.2d at 776. "The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud." Goodyear Tire & Rubber Co., 719 So.2d at 776 (citations omitted).
Chrysler argues that the employees' inability to identify the specific persons who made the promises of preferential rehire rights or who promised that the employees would be considered for future employment precludes the employees from proving that Chrysler, at the time the statement was made, was acting with a present intent to deceive and not to perform the promise.
However, the employees argue that they presented substantial evidence indicating that Chrysler acted with a fraudulent intent; they cite AT & T Information Systems, Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529 (Ala.1989). In that case, this Court recognized that a party may prove fraudulent intent on the part of a company by showing that a statement of the company's representative was contrary to the company's established policies in effect at that time. AT & T Information Sys., Inc., 553 So.2d at 533. The employees contend that the statements regarding preferential rehire rights or consideration for future employment were contrary to the established policies of Chrysler applicable at the time.
Chrysler's only written policy regarding the VTEP is the CBA between the UAW and Chrysler. The CBA provides for the VTEP, outlines eligibility requirements, and provides for payment of a lump-sum payment, to be scaled according to an applicant's seniority; it makes no mention of preferential rehire rights. In fact, the only reference to rehire appearing in the CBA is the provision stating that if an employee takes the VTEP benefits and is later rehired, he will be ineligible to participate in another VTEP for the first five years following his rehire. The CBA says nothing about preferential rehire rights or about an employee's being considered for *796 employment following his participation in the VTEP. In fact, C.H. Eschenbach, who was Chrysler's director of union relations from 1989 to 1991 and was its executive director of union relations and security operations beginning in mid 1992, testified as follows:
"Q: Was there any policy at Chrysler regarding whether people who accepted the VTEP would be hired on a preferential basis ahead of somebody?
"A: They would not be. There is no preferential hiring at all with respect to VTEP.
". . . .
"A: If somebody accepted a VTEP and then applied for subsequent rehire, they would be considered along with the other applications at that time just as though they had never worked for Chrysler before, and they would be either hired or not hired based on the determinations made by the people who are reviewing the applications at that time. There is no preferential rights or consideration to be given.
"Q: Was that the policy in August of 1990?
"A: Absolutely.
". . . .
"Q: Mr. Eschenbach, I want to ask you to assume for me, for purposes of this question, that in August of 1990 the people who were considering the VTEP in Huntsville were told that if they accepted the VTEP that they would be hired in the future after people were called back from layoff but before people off the street; do you follow my assumption?
"A: Yes, I believe so.
"Q: If they had been told that, would that be a statement that was consistent with Chrysler's policy?
"A: Absolutely not."
The employees presented substantial evidence indicating that Chrysler representatives made an oral promise that was contrary to the established company policy regarding the VTEP. We conclude that their evidence created a genuine issue of material fact as to whether Chrysler acted with a fraudulent intent.
Chrysler further argues that the employees failed to prove they suffered any compensable damage as a result of the alleged promissory fraud. The employees' complaint alleged that they had been damaged by relinquishing their seniority with Chrysler, in reliance on the promise of preferential rehire rights. Because each employee did relinquish his seniority, each would have suffered damage as a result of the alleged fraud. However, it is undisputed that the employees would have been at-will employees if Chrysler had rehired them in 1995.[8] Therefore, the only damage we recognize that the employees suffered as a result of Chrysler's alleged promissory fraud is that damage *797 each employee suffered as a result of relinquishing his seniority with Chrysler.
Although the employees collectively showed evidence of damage and created a fact question as to whether Chrysler made representations with a fraudulent intent, so that at least as to some employees the summary judgment must be reversed, Chrysler asserts additional bases for affirming the summary judgment as it relates to certain of the employees.
First, Chrysler argues that 18 employees cannot maintain their promissory-fraud claims because they were unable to identify the person who actually made the promise of preferential rehire rights; this fact, Chrysler says, precludes them from establishing a fraudulent intent to deceive.[9] As we have discussed above, however, it is Chrysler's intent to deceive that is at issue not the intent of the company representative who made the statement. See AT & T Info. Sys., Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529, 533 (Ala. 1989). Therefore, Chrysler's argument on this basis fails.
Next, Chrysler argues that four of the employees cannot establish promissory fraud because those employees learned of the alleged promise of preferential rehire rights from a coworker or from a union representative.[10] Chrysler argues that the communications by which these four employees learned of the alleged promise constitute hearsay and, therefore, are inadmissible.
Rule 56, Ala. R. Civ. P., requires that a motion for summary judgment be supported by facts that would be "admissible in evidence." Hearsay statements that do not fall within an exception are inadmissible and cannot be used as evidence to defeat a properly supported summary-judgment motion. Car Ctr., Inc. v. Home Indem. Co., 519 So.2d 1319, 1322 (Ala.1988). Furthermore, hearsay statements will not support a claim of fraud. Hodges v. Pittman, 530 So.2d 817, 818 (Ala.1988).
The employees first argue that the statements pertaining to preferential rehire rights constitute an "admission" by Chrysler and thus fall within the Rule 801(d)(2), Ala. R. Evid., exception to the hearsay rule. However, Rule 801(d)(2) provides that a statement offered against a party falls within this exception only if it is (A) a statement made by the party, (B) a statement that the party has adopted, (C) "a statement by a person authorized by the party to make a statement concerning the subject," (D) "a statement made by the party's agent ... concerning a matter within the scope of the agency or employment, made during the existence of the [agency or employment] relationship," or (E) "a statement by a coconspirator of a party during and in furtherance of the conspiracy."
Although the employees maintain that Chrysler specifically authorized the union representatives to speak to the employees about the VTEP in the CBA, in actuality the "authorization" in the CBA merely stated that each employee would be given the opportunity to speak with his union *798 representative and/or with management after submitting his application to participate in the VTEP. Therefore, we do not find the statements made by the coemployees or the union representatives to these four employees to be an "admission" within the terms of Rule 801(d)(2), Ala. R. Evid.
The employees also argue that these statements are not hearsay because, the employees say, they were not offered to show the truth of the matter asserted by the statements, but merely to show the effect the statements had on the listeners. While it is true that evidence regarding the effect of a statement on the listener can be used to explain the actions of the listener, the employees, nevertheless, must prove by legal evidence that a misrepresentation was made and must prove the contents of that misrepresentation. Because these four employees cannot, through admissible evidence, show the contents of the statements by which they allege Chrysler made the promise of preferential rehire rights, their claims of promissory fraud fail. Therefore, the summary judgment is affirmed insofar as it related to the promissory-fraud claims of Tula Wade Battle, Cynthia Bousson, Olivia Jolly, and Linda Faye Nash.
Chrysler further argues that summary judgment was proper as to the promissory-fraud claims of Brenda Armstrong White and Doris Segars because, Chrysler says, they have failed to establish that they justifiably relied[11] upon the alleged promise of preferential rehire rights. Reliance on the alleged promise is a requisite element of promissory fraud. See Ex parte Grand Manor, Inc., supra. Because Armstrong White and Segars testified in their depositions that they had decided to apply for the VTEP before they learned of the promise regarding a preferential rehire, they cannot establish the element of reliance. Therefore, we affirm the summary judgment insofar as it relates to the promissory-fraud claims of Brenda Armstrong White and Doris Segars.
Finally, Chrysler contends that the summary judgment was proper as to Julia M. Patton's promissory-fraud claim because, Chrysler says, she could prove neither a false statement nor reliance upon any statement. We agree. Patton testified that no one at the Chrysler plant promised her preferential rehire rights; rather, she said, she just "assumed" that she would be able to return. Clearly, no representation was made upon which she relied. Thus, the summary judgment is affirmed insofar as it relates to Patton's promissory-fraud claim.
As to the promissory-fraud claims of the other 25 employees (those other than Tula Wade Battle, Cynthia Bousson, Olivia Jolly, Linda Faye Nash, Brenda Armstrong White, Doris Segars, and Julia M. Patton), the summary judgment is reversed, and the case is remanded for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
HOUSTON, J., concurs in the result.
MOORE, C.J., and LYONS and JOHNSTONE, JJ., concur in part and dissent in part.
SEE, J., recuses himself.
*799 MOORE, Chief Justice (concurring in part and dissenting in part).
I concur in the main opinion insofar as it affirms the summary judgment in favor of Chrysler on the breach-of-contract and promissory-estoppel claims and on the promissory-fraud claim as asserted by several of the employees this case. However, I dissent from the reversal of the summary judgment insofar as it relates to the promissory-fraud claims of the remaining employees.
The employees in this case agreed in writing to the VTEP. The VTEP told them what rights they were entitled to. Reemployment was not one of those rights. The employees in this case could not have relied justifiably[12] upon any statements made by any other employees, union representatives, or management in discovering their rights under the VTEP. The fact that these employees knew to ask about preferential rehire rights indicates that they knew the VTEP did not address reemployment rights. Did they think management could go beyond what the VTEP expressly stated and promise them something not contained in the VTEP? Did they think that if Chrysler did not rehire them they could demand to be rehired under the VTEP? Consider the following hypothetical: If a coworker told you your Christmas bonus would be $10,000, but you had earlier signed an agreement with your employer that stated that your Christmas bonus would be only $1,000, would you sue your employer for fraud when you were given your bonus and it was $1,000? Would you be justified in believing you would receive more than you had agreed to? In light of the written agreement these employees negotiated with Chrysler, any "reliance" they placed on what management, union representatives, or coworkers told them was not justified.
LYONS, Justice (concurring in part and dissenting in part).
I concur in all aspects of the majority opinion except for its determination with respect to applying the hearsay evidence rule to those plaintiffs who relied upon statements made by the union representatives, as to which I respectfully dissent, and its description of the damages the plaintiffs claim. I join Justice Johnstone's comments concerning the scope of recoverable damages, because the majority opinion's description of the damages claimed is unduly restrictive in light of the allegations of the complaint. I reluctantly concur as to those plaintiffs who relied upon information passed on to them by other employees who had overheard statements made by persons authorized to speak on behalf of Chrysler.
The majority opinion holds, with respect to those plaintiffs who relied upon statements made by the union representatives, that Chrysler "merely stated that each employee would be given the opportunity to speak with his union representative and/or with management after submitting his application to participate in the VTEP." 809 So.2d at 797-98. In its "Employee Guide to Understanding the Voluntary Termination of Employment Program (VTEP)," Chrysler described this source of information as a right "to meet with local representatives of the union and management to discuss once again the provisions of the VTEP and any other concerns the employee may have regarding the decision to terminate employment." (Emphasis added.) Rule 801(d)(2)(C), Ala. R. Evid., provides that a statement is not hearsay if it is offered against a party and is a statement by a person authorized by the party to make a statement concerning the subject. Under the circumstances here presented, *800 any comment that might have been made by a union representative concerning promises of preferential treatment on rehiring was a statement concerning the subject, made by a person authorized to make a statement, and it ought to be admissible as not being hearsay.
With respect to those plaintiffs who relied upon information passed on to them by other employees who had overheard statements made by persons authorized to speak on behalf of Chrysler, I acknowledge that no provision of the Alabama Rules of Evidence permits the admission of this information. Clearly, for these statements to be of benefit to the plaintiffs, they must be offered for the purpose of showing the truth of the statements. Consequently, these statements cannot escape the definition of hearsay on the basis that they are not offered in evidence to prove the truth of the matter asserted. See Rule 801(c), Ala. R. Evid. However, these plaintiffs, while conveying information that is hearsay as to them, repeat evidence that by definition would not be hearsay to those who heard it, because those persons allegedly heard an admission by a person authorized by the party to make a statement. Rule 801(d)(2)(C), Ala. R. Evid. However, under Rule 805, Ala. R. Evid., hearsay included within hearsay is not admissible unless each part of the combined statement conforms with an exception to the hearsay rule.
Because the subject matter of the hearsay passed on by one employee to another has substantial corroboration from others in this proceeding who were present at the same meetings and with respect to which the truth of the same assertions is a central issue in the lawsuit as to numerous other plaintiffs, I find it very difficult to reject the claims of these plaintiffs on the basis of the hearsay evidence rule. However, Rule 802, Ala. R. Evid., provides that hearsay is not admissible except as provided by the Rules of Evidence, by other rules adopted by this Court, or by statute. Under these circumstances I am reluctant to dissent. I submit that this case illustrates a need to promulgate a "residual exception" to the hearsay rule, like that found in Rule 807, Fed.R.Evid.
The Alabama Rules of Evidence deviate from their federal counterparts by not including the rule now appearing as the Federal Rule 807,[13] providing that a statement is not excluded by the hearsay rule under the following circumstance:
"A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant."
*801 Rule 807, Fed.R.Evid. This exception has its genesis in evidence admitted at a trial in a federal court in Selma by the late Daniel H. Thomas, a United States District Judge for the Southern District of Alabama. Judge Thomas's ruling was affirmed in Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5th Cir.1961). See Advisory Committee Notes to former Rule 803(24). We need a residual exception to the hearsay rule to deal with exceptional cases. It is ironic that a national standard having its origin in Alabama does not apply in this state's courts.
JOHNSTONE, Justice (concurring in part and dissenting in part).
While I concur with the main opinion in its analyses of the employees' contract claims and their promissory estoppel claims and further concur with the main opinion in its reversal of the summary judgment against some of the employees on their fraud claims, I respectfully dissent from the following holding:
"Therefore, the only damage we recognize that the employees suffered as a result of Chrysler's alleged promissory fraud is that damage each employee suffered as a result of relinquishing his seniority with Chrysler."
809 So.2d at 796-97. The fraud count in the employees' complaint reads, in pertinent part:
"Plaintiffs have been damaged in that they have given up their rights to continued employment with Acustar and Chrysler, and as a consequence have forfeited their right to receive compensation at the rate that they were paid while employed at Acustar/Chrysler, given up annual, production and Christmas bonuses, health insurance, dental insurance, college education assistance, attendance bonuses, participation in the employee stock ownership plan, free legal services, disability insurance, paid vacation, retirement benefits, savings plans, income protection plans and other employee benefits." (Emphasis added.)
The employees are claiming not only the seniority they lost but also the wages and fringe benefits they lost by retiring from their secure employment under the collective bargaining agreements, in reliance on Chrysler's alleged misrepresentations about the employees' preferential rehire rights. In other words, the employees' theory under their fraud count is that, but for Chrysler's misrepresentations about preferential rehire rights, the employees would not have relinquished their employment under the collective bargaining agreements and thus would not have relinquished the wages and fringe benefits that they would have been paid in their then-existing employment pursuant to the collective bargaining agreements. Their complaint and the amendments thereto plainly identify these damages, as distinguished from wages and fringe benefits that might have accrued upon some preferential rehire that did not occur.
While the employees do also allege that they "have been damaged ... in that they were not hired preferentially by Chrysler," their claim of this damage does not foreclose their expressly alleged claim for other damages resulting from their having "given up their rights to continued employment." The employees are entitled to the construction of their complaint most favorable to them. See Poff v. Hayes, 763 So.2d 234 (Ala.2000), Waters v. Jolly, 582 So.2d 1048 (Ala.1991), and First Nat'l Bank of Mobile v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981).
These employees' employment pursuant to the collective bargaining agreements was virtually the diametric opposite of employment at will[14] in the sense that the *802 employment was certain to continue for the term of each collective bargaining agreement and the extensions or renewals thereof, subject only to discharge for cause (reviewable by a grievance procedure) and layoffs under precisely defined conditions and of precisely defined categories of employees, subject to recall under similarly well defined conditions and of similarly well defined categories of employees. A factfinder, knowing in hindsight, as the jury in this case will know, the number and terms of extensions and renewals of the collective bargaining agreements and the history of the layoffs intervening between these employees' loss of their employment and the time of the trial, can determine with reasonable certainty what wages and fringe benefits each employee has lost. These employees should be allowed to recover damages for the wages and fringe benefits they lost by resigning in reliance upon Chrysler's misrepresentations about those employees' preferential rehire rights, if these employees prove their fraud claims at trial.
I further respectfully dissent from the affirmance of summary judgment against the four employees who heard the misrepresentations from their union representatives. As Justice Lyons explains in his special writing, the statements by the union representatives were authorized by Chrysler and were admissible under Rule 801(d)(2)(C), Ala. R. Evid. Thus, these employees too submitted substantial evidence supporting their claims of fraud.

On Applications for Rehearing
BROWN, Justice.
APPLICATIONS OVERRULED.
MOORE, C.J., and HOUSTON, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS and JOHNSTONE, JJ., dissent.
SEE, J., recuses himself.
LYONS, Justice (dissenting).
I would grant the rehearing application as to the issue of damages, because I do not consider any holding on that issue to be warranted at this stage of the proceedings. I would also grant the application as to the rejection of the claims of those employees who heard statements made by a union representative, for the reasons expressed in my special writing directed to the initial opinion.
JOHNSTONE, J., concurs.
NOTES
[1] The employees who testified that an unidentified Chrysler representative made the promise of preferential rehire rights at the August 1990 VTEP meeting were Debbie Aldridge, Nina Allen, Patsy Boldin, Betty Brown, Sherry Davis, Susan Esslinger, Joyce Fearn, Margaret Gordon, Deborah Grantham, Ina Guger, Brenda Hammonds, Joe Johnson, Rebecca A. Bain Nave, Katherine Reed, Ethel Evelene Shaw Sutton, and Susie M. Thompson.
[2] Employees Mary Fitchard, Deborah Billions McKeown, Jamie Owens Ponder, and Doris Segars testified that Sarah Howard promised them preferential rehire rights if they elected to participate in the VTEP. Those employees who testified that Howard said the VTEP participants would be considered for future employment once Chrysler began rehiring included Bettie L. Craft, Daniel Dayton, Janice Esslinger, Kenneth Lovell, and Janice Whitman. Brenda Armstrong-White testified that a human-resources manager told her of a preferential rehire right for VTEP participants, but only after Armstrong-White had chosen to take the election.
[3] Tula Wade Battle, Olivia Jolly, and Linda Faye Nash testified that coworkers informed them of the alleged promise of preferential rehire rights.
[4] Although over 70 Chrysler workers joined as plaintiffs, this appeal is brought by only 32 of them. They appeal from a summary judgment for Chrysler.
[5] Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C.A. § 185(a) (West 1998).
[6] Sections 7 and 8 of the NLRA outline protected concerted activities and prohibit unfair labor practices.
[7] Of course, in recent years the Legislature has recognized exceptions to this rule. See § 25-5-11.1, Ala.Code 1975 (prohibiting an employer from terminating an employee for filing a claim for workers' compensation benefits); and § 12-16-8.1 (prohibiting the discharge of an employee for serving on a jury).
[8] Although Justice Johnstone, in his special writing, states that "employment pursuant to the collective bargaining agreements was virtually the diametric opposite of employment at will," the CBA does not contain the necessary requisites to convert employment under a collective-bargaining agreement into permanent employment under Alabama law. To constitute an offer of permanent employment, the collective-bargaining agreement must guarantee employment so long as the employer is engaged in the same nature of business, continues to need the services of the employee, and the employee is able and willing to perform the job satisfactorily and gives no cause for discharge. See Alabama Mills, Inc. v. Smith, 237 Ala. 296, 186 So. 699, 701 (1939). The CBA in this case did not constitute an offer of permanent employment; it merely required that any termination be for cause.
[9] Those 18 employees who are unable to identify the person who allegedly promised preferential rehire rights are Debbie Aldridge, Nina Allen, Patsy Boldin, Betty Brown, Detra Campbell, Bettie L. Craft, Sherry Davis, Janice Esslinger, Susan Esslinger, Joyce Fearn, Margaret Gordon, Deborah Grantham, Ina Guger, Brenda Hammonds, Rebecca A. Bain Nave, Katherine Reed, Ethel Evelene Shaw Sutton, and Susie M. Thompson.
[10] Tula Wade Battle, Olivia Jolly, and Linda Faye Nash testified that coworkers told them of the alleged promise of preferential rehire rights. Cynthia Bousson said she was informed of the promise by her union representative.
[11] Although the "justifiable-reliance" standard was overruled by this Court in Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala. 1997), that standard still applies in fraud actions that had been filed before the date that case was decidedMarch 14, 1997. See Foremost, 693 So.2d at 421. Because this action was filed in March 1996, we must review this fraud claim by the justifiable-reliance standard.
[12] This action was filed before March 14, 1997; therefore, the "justifiable-reliance" standard applies. Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997).
[13] The substance of Rule 807 was formerly contained in Rule 803(24). The Advisory Committee Notes to Rule 807 ("1997 Amendment") state:

"The contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807. This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended."
[14] The main opinion in footnote 7 mistakenly assumes that the employees' fraud damages depend on permanent employment. These employees do not rely on permanent employment or on employment at will. They rely on written contracts of employment consisting of the collective bargaining agreements and on the assurances of continued employment and compensation provided and limited by the collective bargaining agreements.